IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RENEE J. TURTLE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-20-165-SPS |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **Acting Commissioner of the Social** ) | |
| **Security Administration,**[1] ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

The claimant Renee J. Turtle requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty-one years old at the time of the administrative hearing (Tr. 35). She completed high school and has previously worked as a motor assembler, personal attendant, and home health care worker (Tr. 24, 206). The claimant alleges that she has been unable to work since January 29, 2018, due to anxiety, depression, memory loss, and arthritis in knees/hands/back (Tr. 205).

### Procedural History

On January 30, 2018, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ B.D. Crutchfield conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 4, 2019 (Tr. 15-25). The Appeals Council denied review, so ALJ Crutchfield's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, and

sit/stand/walk for six hours in an eight-hour workday with normal breaks. Additionally, she determined that the claimant must avoid concentrated exposure to noise and hazards such as unprotected heights and moving machinery. Finally, she found the claimant should have no public interaction and a low-stress environment, defined as occasional decision-making and occasional changes in workplace demands (Tr. 20). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform, *e. g.*, food production sorter, laundry classifier, and final inspector (Tr. 25-26).

## Review

The claimant contends that the ALJ erred by: (i) failing to order a consultative examination; (ii) improperly evaluating the evidence at steps two and three, including improperly inserting her own opinion for medical expertise; (iii) failing to account for all her impairments at step four; (iv) failing to properly evaluate her subjective symptoms, including improperly weighing her daily activities and noncompliance; and (v) failing to support her RFC with substantial evidence. None of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found that the claimant had the severe impairments of anxiety disorder, depressive disorder, lumbar degenerative disc disease, hearing impairment, obesity, and left knee crepitance with range of motion, as well as medically determinable impairments including GERD, insomnia, urinary incontinence, migraines, and obstructive sleep apnea (Tr. 17-18). The relevant medical evidence reflects that in August 2017 (prior to the January 29, 2018 alleged onset date), the claimant reported at a behavioral health

appointment that she had gone from living in a house with three people to a house with nine other people and it was very stressful (Tr. 278). That same month, she was treated for stress urinary incontinence (Tr. 282). In December 2017, she was diagnosed with obstructive sleep apnea (Tr. 435-436).

On January 30, 2018, the claimant reported anxiety and insomnia, and had a counseling appointment the following month (Tr. 370). Regular treatment notes in the record reflect the claimant received treatment for chronic GERD, chronic hyperlipidemia, and possible worsening hearing (Tr. 417). She continued to report some issues with urinary incontinence due to stress and had a consultation regarding a bladder mesh but stated she would like to avoid surgery (Tr. 502). In August 2018, the claimant missed a behavioral health appointment due to being forgetful but stated that she had been anxious enough to go to the emergency room recently (Tr. 536). On December 2, 2018, the claimant reported worsening depression, and indicated a willingness to see a therapist (Tr. 530). In January 2019, the claimant reported only sporadic usage of medication for depression and anxiety, as well as noncompliance with her CPAP machine (Tr. 559). By March 2019, the claimant continued to report family stressors and insomnia, although her physician attributed her mood, energy, and sleep difficulty to noncompliance with using a CPAP machine (Tr. 521).

Dr. Ronald Painton, M.D., reviewed the record and determined that the claimant could perform light work with no additional limitations (Tr. 70-71). Upon review, Dr. Craig Billinghurst agreed that the claimant could perform light work but added the additional limitations of avoiding concentrated exposure to noise and hazards (Tr. 86-88). Dr. Laura Lochner reviewed the claimant's mental health record and found that the

claimant could perform simple and some complex tasks, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but that she could not relate to the general public (Tr. 73). Upon review, Dr. Ron Cummings found the claimant could perform semi-skilled work in a low stress work environment, defined as occasional decision making and occasional changes in workplace demands (Tr. 90).

At the administrative hearing, the claimant testified that she drives four or five times a week (Tr. 41). She also testified, *inter alia*, that the things that prevent her from working include difficulty concentrating, arthritis is both hands, inability to stoop or bend due to her knee problems, and anxiety around large groups of people (Tr. 43). She stated that she tries to do the housework, but that she mainly prepares sandwiches instead of cooking (Tr. 44). She stated that she gets her daughter to read labels to her at the grocery store because she needs new glasses and believes her medication makes her vision blur (Tr. 45). As to her anxiety, she testified that it worsened with stress from her previous job, which even resulted in an incidence of urinary incontinence (Tr. 47-48). She further testified that being around a lot of people and loud areas increases her anxiety (Tr. 48). Additionally, she stated that her depression contributes to distractibility and difficulty with completing tasks (Tr. 51-52).

In her written decision at step four, the ALJ thoroughly summarized the claimant's hearing testimony and much of the medical evidence in the record, including evidence prior to her alleged onset date of January 29, 2018. She first stated that she found the claimant's statements inconsistent with the medical evidence, noting a purported inconsistency that the claimant reported difficulty with large groups of people despite living with nine other

people.  However, she did not acknowledge that such a note pre-dated the alleged onset date and appeared to be a temporary situation based on later treatment notes (from the relevant time period) (Tr. 21).  Additionally, she noted the claimant had not been compliant with medication treatment for her anxiety, and only received treatment every three to six months despite instructions to remain compliant with her medications (Tr. 21).  The ALJ further noted the claimant's lumbar symptoms supporting lumbar degenerative disc disease, as well as her receipt of two left knee steroid injections (prior to the alleged onset date) (Tr. 21-22).  As to the opinion evidence in the record, the ALJ found the state reviewing physician opinions persuasive as to the claimant's physical impairments, noting the assessments were supported by the objective findings related to the claimant's left knee, lumbar degenerative disc disease, hearing impairment, and obesity (Tr. 23).  Additionally, the ALJ found Dr. Cummings's opinion most supported by the record (over Dr. Lochner's), noting that the claimant got along with family but struggled in large groups, which supported a limitation of no public interaction.  She additionally found a limitation to a low stress environment supported but found the limitation to semi-skilled work unnecessary (Tr. 23).  She ultimately determined the claimant was not disabled, identifying three unskilled jobs the claimant could perform (Tr. 25).

  The claimant's first contention is that the ALJ erred by failing to order a consultative examination in this case, because there were no examining opinions in the record.  It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised."  *Henrie v. United States Department of Health & Human Services*,

13 F.3d 359, 360-361 (10th Cir. 1993) (*citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). But the ALJ does not have a duty to order a consultative examination and therefore has "broad latitude" in deciding whether or not to do so. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (*citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990)). "Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial[.]" *Id.* [citation omitted]. "[T]he ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins*, 113 F.3d at 1169. "Thus, the relevant issue before this Court is whether the plaintiff demonstrated there is sufficient evidence of a reasonable possibility that a disability exists, and that a consultative exam would be of material assistance in resolving the issue of disability." *Baraesheia M. P. v. Kijakazi*, 2021 WL 2954003, at *6 (N.D. Okla. July 14, 2021).

Here, the claimant did not raise the issue at the administrative level, and there is nothing in the evidence to indicate that further evaluation was necessary. *See* 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). While additional evidence may have been helpful given the sparse evidence in the record, the claimant has not met her burden establishing such necessity here. *See, e. g.*, *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th

Cir. 2008) (finding "no need" to develop the record with a consultative examination where "sufficient information existed" for the ALJ to make the disability determination.).

The claimant next asserts that the ALJ improperly evaluated the evidence at steps two and three, including inserting her own opinion for medical expertise because there were no in-person evaluations of the claimant in the record. This is, essentially, a continuation of the claimant's argument that the ALJ failed to develop the record with a consultative examination. Having disposed of the claimant's argument regarding ordering a consultative evaluation, the Court simply notes that any error in finding an additional severe impairment is harmless because the ALJ did find the claimant other had severe impairments, which obligated the ALJ to then consider *all* of the claimant's impairments (severe or otherwise) in subsequent stages of the sequential evaluation, including the step four assessment of the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. . . . [T]he ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [citations omitted]. Furthermore, the claimant made no specific argument as to her assertion that the ALJ erred at step three. *See Padilla v. Colvin*, 2015 WL 5341788, at *4 (D. Colo. Sept. 15, 2015) (finding no reversable error at step three where the claimant did not "show with specificity how the ALJ may have erred in his evaluation" and "it [was] clear that the ALJ considered the effect of [the claimant's impairments] on her RFC.").

Next, the claimant contends that the ALJ erred in analyzing her subjective statements, particularly as related to her pain. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent agrees but characterizes the evaluation as a three-part test. *See, e. g., Keyes-Zachary,* 695 F.3d at 1166-67, citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna*) and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

(vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

As outlined above, the Court finds that the ALJ set out the appropriate analysis and cited evidence supporting her reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, she gave clear and specific reasons that were specifically linked to the evidence in the record. Although the ALJ's use of a record prior to the claimant's alleged onset date regarding her ability to be around people is questionable, the ALJ made it clear that she did not base her ultimate assessment on this notation alone. Furthermore, the RFC specifically noted that the claimant was to have no public interaction in light of her difficulty in large groups. The claimant contends that the ALJ improperly counted her noncompliance against her, but this is not borne out by the record. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and her evaluation is entitled to deference. *See Casias*, 933 F.2d at 801.

Finally, the claimant asserts that the ALJ's RFC is unsupported by substantial evidence, including a failure to consider additional limitations related to her hearing,

periodic limb movement, stress incontinence, and insomnia, and *again* contends the ALJ should have ordered a consultative examination. She also appears to assert that this resulted in an error in the identification of jobs she can perform at step five. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7.

But as discussed above, the Court finds that substantial evidence supports the ALJ's determination that the claimant can perform a limited range of light work. The longitudinal evidence in the record does not reflect further limitations, and the ALJ clearly considered the evidence in the record. It appears the claimant is requesting a consultative examination in the hopes to find such evidence, but this is not supported by the record. Because she

-12-

points to no evidence other than her own assertions, the Court declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority."). *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). The final contention is therefore without merit. In essence, the claimant asks the Court to reweigh the evidence in her favor, which the Court cannot do. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") (*citing Casias*, 933 F.3d at 800).

The ALJ specifically noted every medical record available in this case, gave reasons for her RFC determination and ultimately found that the claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (*citing* 20 C.F.R. §§ 404.1527(e)(2);

404.1546; 404.1545; 416.946). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 22nd day of September, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**